**Peter John McKERNAN and Shirley McKernan doing business as Gemini Helicopters, a partnership**

v.

**UNITED TECHNOLOGIES CORP., and General Motors Corp., Allison Gas Turbine Division.**

**Civ. No. H-87-495(AHN).**

United States District Court, D. Connecticut.

June 15, 1988.

Matthew Shafner, O'Brien, Shafner, Bartinik, Stuart & Kelly, Groton, Conn., for plaintiffs.

Patrick Noonan, Wiggin & Dana, New Haven, Conn., Mark Dombroff, Hughes, Hubbard & Reed, Washington, D.C., John B. Nolan, Day, Berry & Howard, Hartford, Conn., for defendants.

NEVAS, District Judge.

After careful review and over objection, the Magistrate's Recommended Ruling is hereby approved, adopted and ratified. SO ORDERED.

## MAGISTRATE'S RULING

THOMAS P. SMITH, United States Magistrate.

Several motions are pending before the court. They are (1) Defendant Allison's ("GMC") Motion to Strike Plaintiffs' Class Allegations (Filing 14); (2) Defendant Sikorsky Division of United Technologies Corporation's ("UTC") Motion for Denial of Class Certification (Filing 18); (3) Plaintiffs' Motion for Conditional Class Certification (Filing 23); (4) Defendant UTC's Motion for Protective Order (Filing 16); and (5) Plaintiffs' Motion to Compel Production of Documents and Things and for Sanctions (Filing 30).

After oral argument, and from its scrutiny of the pleadings which throng the present record, the court concludes that class certification is inappropriate here, for reasons that follow. That being the case, Filings 16 and 30 must be denied as moot.

■ When confronted with a motion for class certification pursuant to F.R.Civ.P. 23(a), the District Court is obligated to undertake a "rigorous analysis" to determine whether the prerequisites of that rule have been met. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). It may not, as counsel for defendant UTC well noted at oral argument and in his able brief, presume the existence of those prerequisites. *Sheehan v. Purolator, Inc.,* 839 F.2d 99 (2d Cir.1988); *Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 597–598 (2d Cir.1986). Before the court can grant class certification, the named plaintiff must bear h/er heavy burden of establishing each element of 23(a).[1]

Even assuming that plaintiffs have met their burden with respect to the numerosity and common question requirements, 23(a)(1) and (2) respectively, they have failed on this record to demonstrate either that they possess claims typical of the class they seek to represent or that they are able to afford fair and adequate protection to

**1.** The elements are "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23, F.R.Civ.P.

To maintain a 23(b)(3) class action, the court must find that these prerequisites are met *and* that (1) common questions of fact or law predominate and (2) a class action is superior to other methods of adjudication. 3B J. Moore, *Federal Practice* ¶ 23.45[1] at 23–289.

the interests of that class as required by 23(a)(3) and (4) respectively.

■ In plaintiffs' view, it is a simple matter indeed to establish typicality in a products liability action: typicality springs into being where all the class members have been subjected to the same defective product. Filing 23 at 23. Thus, plaintiffs assume that their mere exposure to the S-76A helicopter renders them fit representatives of the other class members, all of whom were, by definition, also exposed to the S-76A. The court disagrees.

As defendant UTC correctly points out [t]he typicality requirement guarantees that the named plaintiff, in prosecuting his own claim according to his own interests, will necessarily be protecting the interests of the class he represents.

Filing 29 at 6. Defendants argue, and this court agrees, that because plaintiffs sold their S-76A helicopter well over a year ago, and well before they instituted this action, they cannot be said to have claims typical of the class they seek to represent.[2]

Because they no longer own an S-76A,[3] plaintiffs' claims necessarily differ from those of the class they purport to represent. As defendant UTC correctly notes, present owners suffer from "the threat of engine failure, excessive maintenance, operation at reduced flight loads, and the question whether the alleged problems with the helicopters and the engines are remediable;" plaintiffs do not. Filing 29 at

6; Filing 19 at 16. Present owners have available to them a panoply of legal theories, including rescission, revocation of acceptance, and reimbursement of the purchase price; plaintiffs "forever relinquished" those remedies when they sold their S-76A. Filing 19 at 4 n. 2; Filing 29 at 7. Therefore, unlike the damage to present owners, plaintiffs' damages are "fixed," "limited" seemingly to "consequential damages" for the time they owned their S-76A and the difference between their selling price and the price a non-defective helicopter would have brought them. Filing 19 at 17.

Thus, the McKernans necessarily will seek vigorously to litigate damage theories which differ considerably from those a present owner would pursue. That being the case, the court finds it impossible to comprehend how their interests can be deemed "typical" of the putative class.

In short, the court agrees completely with the position urged by counsel for defendant UTC at oral argument: because their interests are not co-extensive with those of the class, the McKernans have no incentive to adduce at trial the proof required to advance the interests of the putative class.

■ Plaintiffs correctly maintain that typicality does not call for precise identity between the claims of the class and those of its would-be representative. *See* Filing 23 at 17. Yet they fail to see that it

---

**2.** In their motion for conditional class certification, plaintiffs re-defined this class to compromise "all owners and operators of S-76A aircraft during the period starting May 2, 1984 and continuing through the date on which production of the S-76A model helicopter was terminated (mid 1985), excluding the owners and operators of half dozen S-76A's [sic] that have actually been destroyed in crashes." Filing 23 at 1.

Originally plaintiffs had sought to sue on behalf of themselves "and all other private persons, partnerships or corporations who purchased the Sikorsky Model S-76A helicopter ... equipped with Allison 250-C30 or Allison 250-C30S turbine engines ... designed, manufactured, assembled and sold by defendants." Complaint, Filing 1 at 1-2.

**3.** Moreover, the present record convinces the court that, even if the McKernans now owned

an S-76A, their claims would in all likelihood be just as atypical as the court finds them today. As defendant GMC puts it,

[p]laintiffs' claims ... are not typical of the entire class because [they] necessarily arise from individual circumstances peculiar to plaintiffs' use of their S-76A, the performance history of that aircraft, and the plaintiffs' business.

Filing 35 at 18. That is, a given owner or operator's "entitlement to damages ... depends on highly individual circumstances surrounding the purchase and operating history of each helicopter," *id.* at 3, including the fact that each helicopter was custom-designed to each buyer's specifications. Add to this the distinct possibility that at least some owners and operators will have antagonistic interests, and the prospect of class certification on these facts seems unlikely indeed.

demands so close an alignment of those interests "that when a putative representative litigates according to his own interests, he will necessarily protect the interests of the entire class." Filing 19 at 12; *Rosado v. Wyman*, 322 F.Supp. 1173, 1193 (E.D.N.Y.), aff'd 437 F.2d 619 (2d Cir.1970), *aff'd* 402 U.S. 991, 91 S.Ct. 2169, 29 L.Ed.2d 157 (1971). They ignore too the "main purpose" of the typicality requirement, which is to aid the court in its duty to protect absent class members. 3B J. Moore, *Federal Practice,* ¶ 23.06–2 at 23–178.

The danger inherent in permitting the atypical McKernans to represent absent class members has already manifested itself in plaintiffs' admission that the S–76A helicopter is no longer unsafe. Filing 23 at 8. The former owners' major concession of an issue of such vital importance to those class members who still own S–76A helicopters raises serious questions of due process which illustrate the interrelationship of typicality and adequacy of representation:

> "the primary criterion [for determining whether a named plaintiff will adequately represent the class] is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class so as to insure them due process."

*Gonzalez v. Cassidy*, 474 F.2d 67 (5th Cir. 1973), quoting from *Mersay v. First Republic Corp. of America*, 43 F.R.D. 465, 470 (S.D.N.Y.1968). Clearly on this record the McKernans' representation would be unfair to absent class interests. *Moore, supra,* ¶ 23.07[1] at 23–184. Moreover, their representation would be unfair to defendants as well: because they cannot adequately represent the putative class, a judgment in plaintiffs' favor would not bind absent members and thus would provide defendants no guarantee that a judgment against them would have *res judicata* effect. The gravity of these due process concerns reveals plaintiffs' proposed solution for problems of typicality (and commonality) by the "formation of subclasses at the relief stage of litigation" (Filing 23 at 22) to be no solution at all.

In light of the foregoing discussion, which is by no means intended to be exhaustive, and for all of the reasons so masterfully advanced by Mr. Taylor, counsel for defendant UTC, in his oral presentation, plaintiffs' motion for class certification (Filing 23)—"conditional" or otherwise—must be denied, and defendant GMC's motion to strike class allegations (Filing 14) and defendant UTC's competing motion for denial of class certification (Filing 18) granted.

Accordingly, defendant UTC's motion for protective order (Filing 16) is denied as moot, as is plaintiffs' motion to compel production of documents and things and for sanctions (Filing 30).

The parties are free to seek timely review by an Article III judge pursuant to statute, 28 U.S.C. § 636, and Local Rules.

Dated at Hartford, Connecticut, this 22nd day of April, 1988.